N. Y., N. H. & H. R. R. Co. *vs.* George Bork.

PROVIDENCE—JULY 22, 1901.

Present : Stiness, C. J., Tillinghast and Blodgett, JJ.

(1)  *Trespass.  Hackmen.  Railways.  Exclusive Franchises.*

In an action of trespass brought by a railway company against a hackman for soliciting passengers upon the premises of the company, the validity of an exclusive grant of the right to solicit passengers made by the company with one not a party to the suit cannot be put in issue by the defendant.

(2)  *Common Carriers.  Hackmen.  Trespass.  License.*

A common carrier operating a railroad has the right to exclude from its station all hackmen soliciting passengers, within the lines of the company's premises, without its license.

Trespass Quare Clausum.  The facts are stated in the opinion.  Heard on agreed statement of facts, and judgment for plaintiff.

Blodgett, J.   This is an action of trespass *quare clausum fregit*, charging specially that on December 3, 1900, at Providence, the defendant " broke and entered the plaintiff's said buildings and with force and arms at said Providence broke and entered upon the plaintiff's said land and therein and thereon against the prohibition of the plaintiff remained and therein and thereon against the prohibition of the plaintiff, solicited, invited and sought passengers and business as a driver of a hack for hire and therein and thereon with force and arms remained so soliciting, although directed by the

plaintiff to remove himself therefrom." The defendant pleaded the general issue, jury trial is waived, and the case is before the court upon the following agreed statement of facts :

"The plaintiff in the above entitled cause is a corporation duly incorporated and located and doing business in the City and County of Providence and State of Rhode Island. It is carrying on a general railroad business. It has for use in its business a large amount of property part of which it owns and part of which it leases. Its railroad station in Providence is situated north of the Park adjoining the north end of Exchange Place. The main entrance to the station is within the line of Francis street some eighteen feet above the level of the street. The street passes under the station and under the main entrance and the approaches thereto. Francis street runs north and south, and the station occupied by the plaintiff faces the south. To that part of the land covered by the station building and the approaches thereto west of Francis street and north of the white line painted upon the approaches, the plaintiff has a quitclaim deed from the City of Providence, which deed is duly recorded in the Records of Land Evidence in the City of Providence, a certified copy of which deed, marked Exhibit A, is herewith filed and made a part of this statement of facts. To the land east of Francis street occupied by the station buildings and the approaches thereto north of the white line painted on said approaches, the Boston and Providence Railroad Corporation has a quitclaim deed from the City of Providence which is duly recorded in the records of Land Evidence in the City of Providence a certified copy of which deed, marked Exhibit B, is herewith filed and made a part of this statement of facts. The Boston and Providence Railroad Corporation leased to the Old Colony Railroad Company the last mentioned property, and the Old Colony Railroad Company leased that property to the plaintiff, copies of which leases are hereby annexed and marked Exhibits C and D respectively, and made a part of this statement of facts. A certified copy of the plat referred to in the deeds on record in the Records of Land Evidence in the City of Providence is herewith filed, marked Exhibit E, and made

a part of this statement of facts.   Under these deeds and leases the Railroad Company claims the fee in Francis street subject to the ordinary easement in the public to pass and repass on foot and in carriages.   The plaintiff was at the time of the acts hereinafter mentioned occupying and using all of the above mentioned property with the buildings and improvements thereon for the purpose of a general railroad business.

"The defendant is a licensed hackman in the City of Providence.   On the 3rd day of December, 1900, he went directly in front of the main entrance of the plaintiff's station and took his stand upon the sidewalk there, this sidewalk being within the lines of Francis street some 18 or 20 feet above the level of Francis street, at a point marked (X) upon the plat herewith filed.   The white lines above mentioned are the diagonal lines extending out into the street, so-called, directly south of the station premises upon the plat herewith filed and terminating at Francis street.   This point marked (X) would be north of a line or lines drawn from the most southerly point of the property hereinbefore described upon either side of Francis street perpendicular to the line of Francis street.

"Thereupon an officer and agent of the plaintiff notified the defendant that he was upon the property of the plaintiff. and as an officer and agent of the plaintiff he requested him to leave and not remain or loiter.   Thereafterwards, for a considerable time, the defendant remained standing there soliciting passengers in his business as a hackman.   He did not go to the station with any particular passenger, nor had he been engaged to go there to meet a particular passenger, but was merely soliciting generally for custom.

"It is agreed that the above is a true and complete statement of the facts in said case.

"David S. Baker,
"Lewis A. Waterman,
        "Attorneys for plaintiff.

"McGuinness & Doran,
"Page & Page & Cushing,
        "Attys. for defendant."

"June 26, 1901.

"It is agreed that the following be inserted in the above Agreed Statement and be deemed a past thereof:—

"'For a compensation the plaintiff company has granted to a particular hack firm of Providence, the exclusive right to solicit patronage in the station and upon the station grounds, and, at and before the time of the alleged trespass, said firm was engaged in soliciting in said station and upon said grounds, in pursuance of said grant.'

> "David S. Baker,
> "Lewis A. Waterman,
> > "Plaintiff's Attorneys.
> "Page & Page & Cushing,
> "Sole Attorneys for the Defendant."

The single issue thus presented for our consideration is the same issue as was presented in the like case of *Old Colony R. R. Co.* v. *Tripp*, 147 Mass. p. 36, decided in 1888, in which the court said: "The defendant entered under a claim of right and can justify his entry only by showing a right superior to that of the plaintiff. The plaintiff has all the rights of an owner in possession except such as are inconsistent with the public use for which it holds its franchise; that is with its duties as a common carrier of persons and merchandise."

The counsel for the defendant have zealously urged that the railroad company cannot grant a right to solicit passengers to any one individual firm or corporation to the exclusion of all others engaged in the same business. But the validity of such a grant is not before the court in this case. The alleged grantee of such a right is no party to this suit. (1) Neither are the terms of any such alleged contract, whether as to its duration or its other provisions, the subject of inquiry in this action. If this action were an action by or against such a grantee, a very different question might be presented than is presented by the case at bar. But we fail to see that the existence of any such fact as is set forth by the agreed statement of facts affects the rights of the par-

ties to this action in any way. If the act of the defendant was such as he rightly might perform, then the exclusive grant to another is of no effect as to this defendant. If the act of the defendant was not within his legal right, it can avail him nothing that another has been permitted to do for a consideration that which has been denied as of right to him.

In *The D. R. Martin*, 11 Blatch. 234, which was an action for damages for being ejected from a steamboat because the libellant persisted in transacting business as an express agent against the remonstrance of the officers of the carrier, the court held that the libellant was properly ejected, saying : " The rights of the carrier in respect to A. are not gone or impaired for the reason that he waives his rights in respect to B., especially if A. be notified that the rights are insisted upon as to him." See also *Barney* v. *O. B. & H. Steamboat Co.*, 67 N. Y. 301.

(2)   We are of opinion that the single issue here presented is governed by the decision of this court in the like case of *Griswold* v. *Webb*, 16 R. I. 649, decided in 1888, in which the court say : " A railroad station or steamboat wharf is to some extent a public place, the public have the right to come and go there for the purpose of travel, for taking and leaving of passengers and for other matters growing out of the business of the company as a common carrier, but the company has the right to say that no business of any other character shall be carried on within the limits of its property. It has the right to say that no one shall come there to solicit trade simply because it may be convenient for travellers and so to say that none except those whom it permits shall solicit in the business of hacking or expressing. When notice of such prohibition has been given the license which otherwise might be implied is at an end and it is the duty of persons engaged in any such business to heed the notice and to retire from the premises."

The rule as thus laid down by the court finds support in the decisions of other States. To the same effect are the two recent cases, decided in 1900 by the Supreme Judicial Court

of Massachusetts, of *Boston & Albany R. R. Co.* v. *Brown*, 58 N. E. Rep. 189, and *Boston & Maine R. R. Co.* v. *Sullivan et al.*, 58 N. E. Rep. 689. In the latter case Lothrop, J., in issuing an injunction against the defendant, quotes with approval the language of Lord Chancellor Selborne in *Goodson* v. *Richardson*, 9 Ch. App. 221, as follows: "I cannot look upon this case otherwise than as a deliberate and unlawful invasion by one man of another's land for the purpose of a continuing trespass, which is in law a series of trespasses from time to time to the gain and profit of the trespasser without the consent of the owner of the land, and it appears to me as such to be a proper subject for an injunction."

The same rule obtains in New York. In *Brown* v. *N. Y. C. & H. R. R. Co.*, 75 Hun. p. 359 (affirmed by the Court of Appeals in 1897 in 151 N. Y. 674), the court say: "When the passengers alight from the cars at the Falls, defendant's contract relations with them are ended. The business the passengers employ it to do has been performed; the defendant owes them no further duty—it is after the relations of the passenger and the company are ended that the plaintiff's opportunity to deal with them commences; his business is to take the passenger in his carriage at that time and drive him about the city for a consideration." And the court continues: "What right has the plaintiff to demand that the defendant shall appropriate to him for the purpose of carrying on his private business, its yard and cars and that without paying anything for it? . . . If the plaintiff be right in his contention, it logically follows that any one wishing to engage in the business of selling papers, pamphlets, stationery, etc., has the right, if he can find an unoccupied corner in a railroad depot, to insist upon occupying it for his business, if any other person shall be occupying a place in said depot for a like business by permission of the company." See also *N. Y. C. & H. R. R. Co.* v. *Flynn*, 74 Hun. 124; *Same* v. *Sheeley*, 27 N. Y. Supp. 185; *Same* v. *Warren* (decided in 1900), 64 N. Y. Supp. 781.

The same question came before the Supreme Court of Errors

of Connecticut in 1899, in the case of *N. Y., N. H. & H. R. R. Co.* v. *Scovill,* 71 Conn. 136, and the rule is thus declared by Baldwin, J., as follows : " A railroad company which is operating a railroad in its possession has the ordinary right belonging to every owner of real estate to exclude from entry upon it all who come without its consent and can show no superior legal title."

Says Bleckley, C. J., in *Fluker* v. *Georgia R. R. Co.,* 81 Ga. 461 (affirmed in *Kates* v. *Atlanta Baggage & Cab Co.,* 107 Ga. 636, decided in 1899) : " We cannot believe that there is a sort of right of common lodged in the public at large to enter upon lands on which railroads are located, and over which they have secured the right of way. Such lands the railroad companies may inclose by fences if they choose to do so, and exclude any and all persons whomsoever. Their dominion over the same is no less complete or exclusive than that which every owner has over his property. If they do not choose to erect fences and make enclosures, they may, by mere orders, keep off intruders, and they may treat as intruders all who come to transact their own business with passengers or with persons other than the companies themselves."

In view of the foregoing decisions, the further citation of authority seems unnecessary.

Judgment for the plaintiff for ten cents damages and costs.

*David S. Baker and Lewis A. Waterman,* for plaintiff.

*Page & Page & Cushing,* for defendant.