ATCHISON, T. & S. F. RY. CO. v. TIEDT.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1912.)

No. 1,786.

1. RAILROADS (§ 218*)—SERVICE—DUTY TO RENDER.
   While a carrier in general has a duty to serve the public, the right to be served is in the public as such, and arises only when some individual demands a service that is common and due to him as a member of the public.
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 715; Dec. Dig. § 218.*]

2. RAILROADS (§ 218*)—PARTICULAR SERVICE—DUTY TO RENDER.
   Where an individual separates himself from the public and demands a use of a common carrier's property or facilities, not in the common right, but for his own profit or advantage, the carrier may either refuse or obligate itself to give the special privilege, so long as it does not incapacitate itself for full performance of its public obligations.
   [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 715; Dec. Dig. § 218.*]

3. PRINCIPAL AND AGENT (§ 183*)—SERVICE—DUTY TO GIVE—ACTION BY AGENT OF INTENDING PASSENGERS.
   Plaintiff, as agent of intending passengers, cannot complain of the carrier's refusal to render service; the right to service being in the intending passengers.
   [Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 691–700; Dec. Dig. § 183.*]

4. RAILROADS (§ 218*)—SPECIAL SERVICE—DUTY TO GIVE.
   No group of persons separating themselves from the public can demand, in the common right, that a special train to which they alone,

lar days and at particular hours, at their election, to a suburban amusement park, nor can the lessee of the park compel the carrier by mandamus to furnish such service.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1715; Dec. Dig. § 218.*]

5. RAILROADS (§ 218*)—EFFECT OF CUSTOM.

A carrier's custom to furnish special service to and from an amusement park under special contracts would not establish a custom to furnish such service without the contracts.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 715; Dec. Dig. § 218.*]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Frederick C. Tiedt against the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Defendant in error (plaintiff below) alleged in his declaration: That for 10 years prior to 1908 he owned and still owns a picnic park contiguous to defendant's railway in Cook county, Ill.; that at defendant's special instance and request he expended $45,000 in putting in amusement features; that prior to the grievances herein complained of he had been making $15,000 a year out of the patronage of excursionists; that up to 1908 defendant encouraged plaintiff to maintain and operate his park; that near plaintiff's park was Columbia Park; that the two were the only practicable sites for picnic parks on defendant's line near Chicago; that the length and character of haul, cost of service, and volume of business to the two parks were practically the same; that no other transportation line was available; that prior to 1908 defendant furnished excursion trains to both under substantially the same circumstances and conditions and without discrimination; that during 1908, and thence hitherto, defendant continued the same service to Columbia Park, but, in violation of its duty, refused to run excursion trains to plaintiff's park, to his great damage.

On a trial of the general issue, the court submitted the case to the jury as one of unlawful discrimination. The jury returned a verdict for $33,000, $15,000 being for damages accrued and $18,000 for future damages; and judgment on the verdict was entered.

Of 43 assignments of error we deem it essential to consider only 2: Refusal to direct a verdict for defendant; overruling the motion in arrest of judgment.

For the determination of these assignments plaintiff's evidence may be assumed to support every allegation of fact in the declaration. We pass over all of defendant's evidence that special trains to plaintiff's park were refused on account of the boisterous and unruly conduct of excursionists, breaking windows, damaging seats, interfering with safe operation by pulling bell cords, air-brake valves, and the like, and note only the undisputed status relating to discrimination. In March, 1908, plaintiff served a written demand upon defendant to furnish for "himself individually" as owner of the park and for him "as agent" of 24 named clubs or societies special trains of from 12 to 80 cars on dates between May and August. Defendant, calling attention to the fact that there was no contract for such special services, offered, if the societies plaintiff professed to represent should desire to use the regular trains scheduled to stop at the station adjoining plaintiff's park and would give reasonable notice of the number of cars necessary to add to such trains, to furnish accommodations to all persons who should apply for tickets at regular passenger rates. This offer was rejected, on the ground that nothing but special excursion trains would do. Before this controversy arose the course of business was for plaintiff to arrange with a society to rent his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

park for a certain day, and then for the society to make a special contract with defendant for an excursion train on that day.

Robert Dunlap, for plaintiff in error.

Fred W. Bentley, for defendant in error.

Before BAKER and SEAMAN, Circuit Judges, and CARPENTER, District Judge.

BAKER, Circuit Judge (after stating the facts as above). If a duty rests upon a public service corporation to afford facilities independently to each of two persons, industries, or localities, the service must be rendered on substantially equal terms, impartially, without undue discrimination. But if no duty in law exists to serve either, then the giving to one of what is not owed cannot be a basis for the other's complaint of unlawful discrimination; that is, back of any question of unlawful discrimination must lie the duty to serve.

[1, 2] It is usually said that a common carrier's duty is to serve the public. In a general sense this is true, for latently the right to be served is in the public; but the carrier's duty arises only when some individual demands a service that is common, that is due to him as a member of the public. And if the individual separates himself from the public, and demands a use of the carrier's property or facilities, not in the common right, but for his own separate profit or advantage, the carrier may either refuse or, within certain limits, obligate itself to give the special privilege. We say "within certain limits," for in the public interest the carrier cannot be permitted to incapacitate itself for the full performance of its public obligations. These principles are sufficiently illustrated in The Express Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791; Lake Shore, etc., Ry. Co. v. Smith, 173 U. S. 697, 19 Sup. Ct. 565, 43 L. Ed. 858; Donovan v. Penn. Co., 120 Fed. 215, 57 C. C. A. 362, 61 L. R. A. 140, affirmed in 199 U. S. 279, 26 Sup. Ct. 91, 50 L. Ed. 192; Johnson v. Georgia Rld. Co., 108 Ga. 496, 34 S. E. 127, 46 L. R. A. 502; State ex rel. Skeen v. Ogden Rapid Transit Co. (Utah) 112 Pac. 120; 1 Wyman on Public Service Corporations, § 757.

[3, 4] Tested by these principles, a cause of action was neither pleaded nor proved. Plaintiff was not demanding, in the common right, that he be accepted as a passenger. As agent of intending passengers, plaintiff had no standing, for the right would be in them. Further, no group of persons, who separate themselves from the public, can demand, in the common right, that a special train, to which they alone, and not the public generally, shall be admitted, shall be run on such days and at such hours as they choose to Birnam Wood, or any field or grove that pleases them. Still less is there room for the claim that every landowner, or any landowner, who may have rented his ground to intending picnickers, can by mandamus compel the carrier to furnish such trains.

Defendant, a foreign corporation doing an interstate business, was, of course, as fully subject to Illinois law as any interstate carrier chartered by the state. But we find nothing in the Illinois Constitution, statutes, or decisions that furnishes any foundation for plaintiff's case.

Authorities dealing with the rights of passengers, shippers, and consignees are not in point, for plaintiff was not a passenger, nor was he a shipper or consignee of passengers.

[5] Contract and custom were urged in argument as additional grounds of plaintiff's case. That plaintiff on defendant's "encouragement" should have opened his park, and "at defendant's special instance and request" should have invested so large a sum in structures, may have been unfortunate. But no contract elements of time, terms, conditions, mutuality, appear in pleadings or proofs; and the cause was submitted to the jury solely as one of discrimination. As to custom it is enough to say that a custom to do a thing from time to time under special contracts will not establish a custom to dispense with contracts.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.