CASE 22.—ACTION BY HARRY ANDERSON AGAINST THE
         PALMER TRANSFER COMPANY FOR AN INJUNC-
         TION.—January 7.

## Palmer Transfer Co. v. Anderson

Appeal from McCracken Circuit Court.

W. M. REED, Circuit Judge.

Judgment for plaintiff.   Defendant appeals.—Affirmed.

Carriers—Regulation—Use of Carrier's Premises.—A contract by
    which a railroad gave a transfer company the exclusive use
    of a part of its station grounds along which there was a
    gravel walk, and which was most convenient to the trains on
    which the greater number of passengers arrived and departed,
    so that such passengers were compelled to walk 150 feet past
    the transfer company's cabs before reaching a place where
    other cabs could stand, gave the transfer company a practical monopoly of the transfer business, and was void.

WHEELER, HUGHES & BERRY for appellant.

CRICE & ROSS of counsel.

### POINTS AND AUTHORITIES.

1. If the appellee has any cause of complaint against anybody,
such cause of complaint did not and does not exist against the
appellant, consequently the appellee has sued the wrong party
as the allegations of the petition and amended petition will show
and the appellant's demurrer to the petition should have been
sustained.

Palmer Transfer Co. v. Anderson.

2. The contract existing between the Illinois Central Railroad Company and appellant is not void on account of being contrary to public policy, but is a valid contract and one which the appellee has no right in law to attack, because the only duty owing by the Illinois Central Railroad Company is to the traveling public and it owes no duty to the appellee and he had and has no right to use any part of the railroad company's grounds around its depot except as a licensee and by license from the railroad, which license is revokable by the railroad, either as to the whole of the approaches to the depot or to any part of same, and which was revoked by the railroad to that part covered by the contract with the appellant at the time such contract was made. (Hedding et al. v. Gallager et al., 57 Atlantic Reporter, 225. And cases therein cited.)

BRADSHAW & BRADSHAW, for appellee.

We respectfully submit that the lower court committed no error in perpetuating the injunction as prayed for by the appellee and the case should be affirmed on the appeal. But on cross appeal the court in our opinion committed an error in refusing to adjudge the appellee any damages in view of the fact that he established the damages sustained on account of the wrongful acts of the appellant and which the appellant failed to deny or disprove and we submit that the holding of the lower court should be reversed on the cross appeal with directions to award the appellee damages in the sum prayed for in his petition.

LIST OF AUTHORITIES CITED FOR APPELLEE.

McConnell v. Pedigo and Hayes, 92 Ky. 465; Mon. Union Railroad Company v. Langolis, 9 Mon. 419, 8 L. R. A. 753; Kalamazoo Cab and Buss Company v. Sootsma, 84 Mich. 194, 22 A. St. R. 93, 10 L. R. A. 819; Indianapolis Railway Company v. Dohn, 153 Ind. 10, 58 N. E. 937, 45 L. R. A. 427; Old Colony Company v. Tripp, 147 Mass. 43, 9 A. St. R. 661, 17 N. E. 89 (see dissenting opinion;) Miss. v. Reed, 43 L. R. A. 134 (Decided Dec. 1898); Sandford v. Calamissa Railroad, 24 Pa. St. 278; Cravens v. Rogers, 101 Mo. 247, 14 S. W. 106.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Affirming.

Plaintiff, Harry Anderson, the owner of a line of
cabs, busses, and baggage wagons in the city of Pa-
ducah, instituted this action against the defendant,
Palmer Transfer Company, a corporation engaged in
a similar business, to enjoin the latter from inter-
fering with him in the use of a certain plot of ground
adjoining the approach to the Union Depot in Padu-
cah, and also to recover damages for being deprived
of the right to use the plot of ground. Defendant's
demurrer to the petition being overruled, it then filed
answer, denying the allegations of the petition and
claiming that it had the right to use the plot of ground
in question under and by virtue of a contract which it
made with the Illinois Central Railroad Company, by
the terms of which it agreed to meet all incoming and
outgoing trains with its cabs and busses, and serve the
traveling public in an orderly manner, and further
bound itself to transport passengers and baggage
from all parts of the city of Paducah at the rate of 25
cents for each passenger and 25 cents for each piece
of baggage, and also to perform certain other cove-
nants mentioned in the contract, all of which defend-
ant alleged it had fully and faithfully performed. By
reply plaintiff alleged that the contract between the
defendant and the railroad company gave to the de-
fendant the exclusive use of a large part of the ap-
proach lying nearest to the depot and best equipped
with improved walks, and thereby gave to the
defendant a monopoly of the passenger and baggage
carrying business to and from the depot, that on this
account the contract relied upon by the defendant

was against public policy, and therefore, null and void. By amended petition, the plaintiff also charged that it was the duty of the railroad company to provide comfortable and convenient accommodations for the traveling public, and that it had failed to perform that duty to the public by granting the contract in controversy, which created a practical monopoly of the passenger and baggage carrying business. Depositions were taken, and the case submitted to the chancellor, who granted the injunction prayed for by plaintiff, but declined to give him any damages. From that judgment, the Palmer Transfer Company prosecutes this appeal.

The facts in this case are as follows: The Illinois Central Railroad Company and the Nashville, Chattanooga & St. Louis Railway Company have a union station in the city of Paducah. Leading southward from Caldwell street towards the depot building there is a roadway or approach 64 feet wide and 315 feet long. A platform or walkway extends along the south end of the roadway its entire width—64 feet. A sidewalk or platform of gravel or crushed stone, 15 feet in width, with concrete or stone curb, extends along the west side of the roadway its entire length of 315 feet. The roadway and the depot are between the main tracks of the two railroad companies. The passengers board or alight from the Illinois Central trains on the west side of the depot and roadway, and from the Nashville, Chattanooga & St. Louis trains on the east side thereof. The space occupied by the Palmer Transfer Company is on the west side of the roadway. This space is 32 feet wide, and extends from the south end of the roadway towards Caldwell street 150 feet. The space being taken out of the driveway leaves 32 feet on the east side and 115 feet on the west

side that is open to public use. Out of the 32 feet, however, about 8 feet is occupied by the street car line, and, taking into consideration the danger of being near the street car line or the railroad tracks, the space left next to the depot building is about 20 feet. This 20 feet is fairly convenient of access and approach to the Nashville, Chattanooga & St. Louis trains, but by far the larger portion of the traffic to and from the union depot is over the tracks of the Illinois Central. In order for passengers from the Illinois Central to reach the cabs or busses of those transfer men who are not permitted to occupy the space in question, they must proceed down the platform and pass by the cabs or busses of the Palmer Transfer Company for a space of 150 feet.

Plaintiff Anderson testified that he had on an average three cabs to meet trains at the union station, and that the Palmer Transfer Company had four; that it was much more convenient for passengers leaving the union station to use the carriages of the Palmer Transfer Company because these carriages were closer, and a portion of the approach set aside for that company had a gravel walkway along its entire length, from which passengers could step into its carriages; that this walkway was not constructed by the Palmer Transfer Company for its own convenience, but was a part of the general depot improvements and conveniences provided by the railroad company for the public; that, in order for a passenger to get to the carriages of the appellee or any other cabmen except the Palmer Transfer Company, they would have to walk a distance of 150 feet past a long line of carriages of appellant; and that, under ordinary circumstances, no passenger would do this. He further stated that he had been in the transfer business since

May, 1902, during all of which time the Palmer Trans-
fer Company had excluded him from the use of that
portion of the approach in controversy, and that his
loss on this account amounted to at least $2 per day
up to the 'day of filing the suit.  The witness further
testified to the fact that the Palmer Transfer Com-
pany had changed the post dividing the space occu-
pied by it from the rest of the roadway, and he was
denied admittance to the space so occupied by it, and
.upon one occasion when he had entered this space a
warrant was issued against him by the officers of the
Palmer Transfer Company.

For the defendant R. L. Palmer testified that his
company had transfer agents on the various trains,
and that the principal part of his business consisted
in carrying passengers and the baggage of passengers
who had previously contracted with its train agents.
Witness produced the contracts between his company
and the railroad companies, and made them a part
of his deposition.  He stated that there was plenty of
room for the busses and wagons of other transfer
agents to occupy.  Witness further testified that his
company might secure more business by having the
contracts giving the company the right to occupy the
place in dispute.

In the case of McConnell v. Pedigo & Hays, 92 Ky.
465, 13 Ky. Law Rep. 689, 18 S. W. 15, this court had
under consideration a question similar to the one
involved in the case at bar.  In that case the railroad
company granted to McConnell, to the exclusion of
all other persons engaged in a like business, the right
to come upon its depot grounds in Glasgow, Ky., with
his vehicles for the purpose of receiving and deposit-
ing passengers and freight.  The contract was being
carried out by McConnell when the firm of Pedigo &

Hays undertook to transfer passengers to and from the depot, and claimed the right to stand their hacks upon the grounds near and at the depot, when in so doing they did not interfere with the business of the railroad company. McConnell sought an injunction against Pedigo & Hays, and, his petition being dismissed, he appealed to this court. It was here held that a regulation of a railroad that discriminates by driving from its depot those who are engaged in a public employment and whose duty it is to provide for their guests and the traveling public, resulting in a monopoly of the particular business, is unauthorized by the charter of a railroad company, and in palpable violation of the rights of others. While it may be admitted that the English rule and the rule of several other States is different from that announced above (Barker v. Midland Railway Co., 86 English Common Law Reports, 46; Old Colony Railroad Co. v. Tripp, 147 Mass. 35, 17 N. E. 89, 9 Am. St. Rep. 661; Hedding v. Gallagher, 72 N. H. 377, 57 Atl. 225, 64 L. R. A. 811), yet the courts of several States hold to the view adopted by this court (Montana Union Ry. Co. v. Langlois, 9 Mont. 419, 24 Pac. 209, 8 L. R. A. 753, 18 Am. St. Rep. 745; Kalamazoo Cab & Buss Co. v. Sootsman, 84 Mich. 194, 47 N. W. 667, 10 L. R. A. 819, 22 Am. St. Rep. 693); and in the recent case of Indianapolis Railway Co. v. Dohn, 153 Ind. 10, 53 N. E. 937, 45 L. R. A. 427, 74 Am. St. Rep. 274, the case of McConnell v. Pedigo & Hays, supra, was cited with approval. That being the case, we see no reason for changing the rule announced by this court.

Counsel for appellant, however, insist that the rule laid down in the case of McConnell v. Pedigo & Hays has no application to this case, because abundant space is left for Anderson and other hackmen, and

that the contracts between appellant and the railroad companies do not create a monopoly. We confess, however, that we are unable to differentiate this case from that cited. While there is some space still left for Anderson and the other hackmen to occupy, it is so inconviently located with reference to the larger part of the business of carrying passengers and baggage that the giving to appellant of the space occupied by it constitutes such a preference over other transfer men as to afford it a practical monopoly of the business. There is, in effect, no difference between giving a transfer company the exclusive right to occupy the depot grounds and the right to occupy that portion thereof which necessarily results in its securing by far the larger share of the business. We therefore conclude that appellant's contracts, operating as they do to give it a practical monopoly, are null and void, and that appellant has no right to occupy the space in question to the exclusion of appellee and other hackmen.

We are inclined to the opinion that the chancellor did not err in refusing to allow the plaintiff damages. For the reasons given, the judgment is affirmed.